ams

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| GEOFFREY L. RASHAW-BEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 09-3075-JAR |
| | ) | |
| RICARDO CARRIZALES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Before the Court is defendants' Motion to Dismiss, or, in the alternative, for Summary Judgment (Doc. 17). The Court also considers plaintiff's Motion to Supplement (Doc. 28); Motion for Leave to Introduce Evidence (Doc. 31); Motion for Order (Doc. 36); and Motion for Extension of Time to File Surreply (Doc. 38). The Court has reviewed the parties' briefs and is prepared to rule. As explained more fully below, plaintiff's motion to file a surreply is denied, defendants' motion to dismiss is granted, and plaintiff's motions to submit additional evidence are each denied.

**I.    Motion for Leave to File Surreply**

On February 25, 2010, defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 17), seeking dismissal for lack of subject matter jurisdiction and failure to state a claim, or in the alternative, summary judgment. Plaintiff's response was due March 22, 2010.[1] On April 13, 2010, defendants filed a motion seeking an immediate ruling due to plaintiff's failure to respond. The Court denied defendants' motion and

---

[1] D. Kan. R. 6.1(d)(2).

allowed plaintiff until June 14, 2010 to respond. Thereafter, plaintiff filed two additional motions for extension of time that the Court granted; his response was ultimately timely filed on August 2, 2010. Defendants filed a reply on August 16, 2010.

The local rules in this district do not provide for the filing of a surreply. But "if the court relies on new materials or new arguments in a reply brief, it may not forbid the nonmovant from responding to those new materials."[2] Here, defendants did not rely on new materials or new arguments in their reply. The reply responded to arguments advanced by plaintiff in the response. Moreover, plaintiff states in his motion that he seeks additional time to file a surreply because he intends to research the issue of qualified immunity. As discussed in more detail below, the Court need not address the qualified immunity issue because it finds that plaintiff has failed to state a constitutional claim upon which relief may be granted. Under these circumstances, the Court is unable to find that a surreply is warranted and denies plaintiff's motion for leave to file surreply.

## II.  Legal Standards

Defendants move to dismiss the individual-capacity claims under Fed. R. Civ. P. 12(b)(4) for insufficient process and 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[3] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support

---

[2]*Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1191 (10th Cir. 2006).

[3]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

for *these* claims."[4] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[5] but requires more than "a sheer possibility."[6]

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly* seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[7] *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[8]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[9] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[10] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[11] "A claim has facial plausibility when the plaintiff pleads factual content

---

[4]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[5]*Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949 (2009).

[6]*Id.*

[7]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[8]*Id.* (citing *Twombly*, 550 U.S. at 556).

[9]*Iqbal*, – U.S. –, 129 S. Ct. at 1949-50.

[10]*Id.* at 1950.

[11]*Id.*

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]

If the court on a Rule 12(b)(6) motion looks to matters outside the complaint, the court generally must convert the motion to a Rule 56 motion for summary judgment. However, the court may consider documents which are referred to in the complaint.[13]

While not explicitly raised by defendants, dismissal of any official capacity claim in this case is pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction. District courts have "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."[14] "A case arises under federal law if its 'well pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"[15] Plaintiff is responsible for showing the court by a preponderance of the evidence that jurisdiction is proper.[16] Mere allegations of jurisdiction are not enough.[17]

Because plaintiff pursues his action *pro se*, the Court must remain mindful of additional considerations. A *pro se* litigant's pleadings are to be construed liberally and held to a less

---

[12]*Id.* at 1949.

[13]*See GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384-85 (10th Cir. 1997).

[14]28 U.S.C. § 1331.

[15]*Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)).

[16]*United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002).

[17]*Id.* at 798.

stringent standard than pleadings drafted by lawyers.[18]  Thus, if a *pro se* plaintiff's complaint can reasonably be read "to state a valid claim on which the plaintiff could prevail, [the court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."[19]  However, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant."[20]  For that reason, the court should not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues,"[21] nor should it "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."[22]

## III. Background

Plaintiff, a federal prisoner proceeding *pro se*, seeks monetary damages against various individual defendants, under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,[23] alleging violations of his constitutional rights during his incarceration with the Federal Bureau of Prisons ("BOP") at its United States Penitentiary at Leavenworth, Kansas ("USP Leavenworth").  Plaintiff's claims remain against defendants Ricardo Carrizales, Alexander White, Eloisa Garza, Thomas Hostmeyer, "Mrs. Keys," and Darth Muncy, all

---

[18]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 1972)).

[19]*Id.*

[20]*Id.*

[21]*Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[22]*Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

[23]403 U.S. 388 (1971).

5

correctional officers at USP Leavenworth.

Plaintiff filed a Complaint,[24] as well as a "Supplemental Brief,"[25] setting forth his claims, along with supporting documents. Plaintiff alleges in these pleadings that: (1) staff improperly handled his personal mail; (2) staff improperly tampered with the majority of his legal mail; (3) he has been prevented from mailing out legal mail due to the closure of the "open house" periods for one to two days per week; (4) his properly marked incoming legal mail was opened and delivered to him through regular mail procedures; (5) certain defendants refused to accept his outgoing legal mail, refused to stamp or mail out his legal mail if he did not place additional postage on the envelopes; (6) he has received agency administrative remedy responses late; (7) staff improperly handled his special mail; (8) he has received few, if any, editions of certain magazine subscriptions; (9) he has not received special offers and/or gifts associated with his magazine subscriptions; (10) he has not received certain catalogs; (11) he has been purposefully overcharged for postage by staff; (12) defendant Carrizales told him he would ensure the post office paid special attention to a specific stamp on one of his envelopes; (13) certain mail is being returned to him due to insufficient postage; and (14) the institution's grievance process is ineffective in resolving disputes.

Plaintiff seeks the following relief: (1) an explanation as to "exactly where the breakdown in the mail service occurred"; (2) unspecific monetary damages for "reimbursement for all my magazine subscriptions from the responsible parties"; (3) unspecified monetary damages for "responsible parties to be paid to me for the lack of use of my suspected catalog,

---

[24](Doc. 1.)

[25](Doc. 5.)

magazines, legal responses from and to the courts, and for the postage, filing fee, etc. in this entire matter"; and (4) further relief as the court deems just and proper.

Plaintiff and defendants have submitted grievance forms that plaintiff completed with regard to several of the fourteen issues referenced above. These documents are included in Administrative Remedy Packet No. 498346.[26] His initial grievance form was dated June 19, 2008 and stated that his personal and legal mail had been tampered with "going out and coming in." The Warden denied plaintiff's request for administrative remedy, stating that plaintiff had not provided any evidence that his mail had been mishandled. Plaintiff next filed a regional administrative remedy appeal on July 17, 2008. Again, he stated that USP Leavenworth staff tampered with his mail, specifically that he was not receiving certain magazines he subscribed to. The Regional Director found plaintiff's claims to be without merit. Finally, plaintiff filed a Central Office Administrative Remedy Appeal, again referring to the fact that he had not received certain magazine subscriptions and that his personal and legal mail had been tampered with. This appeal was denied on October 28, 2008. Plaintiff filed his Complaint in this matter on April 13, 2009.

**IV.    Discussion**

Defendants seek dismissal on various grounds. First, defendants argue that defendant Keys should be dismissed for failure to effect service under Fed. R. Civ. P. 12(b)(4). Next, defendants argue that any claims beyond the two-year statute of limitations are barred, so plaintiff may not assert claims based on constitutional violations that occurred prior to April 13, 2007, two years prior to the filing of the Complaint. Third, defendants argue that many of the

---

[26](Doc. 18, Attach. 1., Ex. D; Doc. 5 at 19–24.)

7

claims asserted in the Complaint and Supplement were not properly exhausted. Finally, defendants argue that plaintiff fails to state constitutional claim upon which relief can be granted, or in the alternative, that summary judgment is appropriate.

### A.     *Motion to Dismiss Defendant Keys Under Rule 12(b)(4)*

The summons for defendant (FNU) Keys was returned unexecuted on December 14, 2009. The attached letter from the BOP states that it is unable to accept the summons because there is no correctional officer at USP Leavenworth named (FNU) Keys. *Bivens* actions against federal employees require personal service pursuant to Fed. R. Civ. P. 4(e) or waiver of process under Fed. R. Civ. P. 4(d).[27] In this case, the clerk of the court was ordered on October 27, 2009 to issue appropriate summons on behalf of plaintiff pursuant to Fed. R. Civ. P. 4. Summons were returned executed by certified mail as to all defendants, but on December 14, 2009, a Notice of Summons Returned Unexecuted was filed as to defendant Keys, stating that there is no such person with the last name "Keys" employed at USP Leavenworth. Thus, service has not been properly made on this defendant, and pursuant to Fed. R. Civ. P. 4(m), the Court concludes that defendant Keys should be dismissed without prejudice because of the failure to effect service within the 120-day time limit. This defendant has not filed an Answer; rather all of the defendants have filed a motion to dismiss or, in the alternative, a motion for summary judgment. Plaintiff does not respond or otherwise show good cause for the failure to serve this defendant and the Court agrees that dismissal is appropriate for failure to effect service.

### B.     *Statute of Limitations*

An action brought under *Bivens* is subject to the statute of limitations under 42 U.S.C. §

---

[27]*Armstrong v. Sears*, 33 F.3d 182, 187 (2d Cir. 1994).

1983, which is "set by the personal injury statute where the cause of action accrues."[28] In Kansas, a two-year statute of limitations applies to personal injury actions.[29] Defendants argue that any claims presented by plaintiff that accrued prior to April 13, 2007 fall outside the statute of limitations and should be dismissed. The Court agrees. Plaintiff's claims are barred to the extent they occurred prior to April 13, 2007 and are, therefore, dismissed as untimely.

## C. *Exhaustion of Administrative Remedies*

Next, defendants argue that many of plaintiff's mail-related claims are not administratively exhausted. Federal prisoners who bring an action with respect to prison conditions, including those who bring suit under *Bivens*, must exhaust inmate grievance procedures.[30] The exhaustion requirement is mandatory and applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[31] The exhaustion requirement requires proper exhaustion so that "the prison grievance system is given a fair opportunity to consider the grievance."[32] This requires compliance with prison grievance procedures.[33]

The BOP has a three-part administrative remedy program designed to address a federal inmate's concerns regarding any aspect of his or her confinement, found in Program Statement

---

[28] *Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009).

[29] K.S.A. § 60-513(a)(4).

[30] 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524 (2002).

[31] *Porter*, 534 U.S. at 532. Failure to exhaust administrative remedies is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 212–13 (2007).

[32] *Woodford v. Ngo*, 548 U.S. 81, 93–94 (2006).

[33] *Jones*, 549 U.S. at 218.

1330.13, Administrative Remedy Program.[34]  Generally, an inmate has not exhausted his remedies until he has sought review and received a final response at three levels: institution, region, and National Inmate Appeals.[35]

According to plaintiff's Administrative Remedy forms submitted with his Complaint, Supplement, and response to the motion to dismiss, he has exhausted only one administrative remedy concerning his mail-related issues at USP Leavenworth, contained in Administrative Remedy Packet No. 498346.  In Administrative Remedy Packet No. 498346, the agency provided a response to plaintiff's claims related to non-specific incidents of tampering with his personal, special and legal mail, inability to send personal and legal mail, as well as issues related to certain catalogs and magazines.  Plaintiff's last administrative remedy response from National Inmate Appeals is dated October 28, 2008.  Plaintiff has submitted numerous "Inmate Request to Staff" forms that post-date October 28, 2008, but these forms do not constitute grievance forms that are part of the BOP's administrative remedy program.  To be sure, plaintiff appears to agree that the grievances in Administrative Remedy Packet No. 498346 are "the only issues necessary to be addressed in this suit."[36]  Accordingly, the Court need not consider the evidence plaintiff seeks leave to file in his Motion for Leave to Introduce Evidence (Doc. 31), as it is an Inmate Request to Staff form dated June 30, 2010.  Accordingly, that motion is denied.

Plaintiff did not to seek to exhaust, nor complete all levels of exhaustion, for his administrative remedies with respect to the following topics: any mail issues subsequent to

---

[34]28 C.F.R. § 542.10.

[35]*Id.* § 542.15(a).

[36](Doc. 35 at 5.)

10

October 28, 2008; any issues related to overcharging postage for mail items; any issues related to refusal to accept or mail certain items out of the institution; any issues related to certain stamps and/or alerting the United States Postal Service to a particular envelope or postage; any issues related to items being returned to him for lack of proper postage; any issues related to improper weighing of his mail for postage purposes; his failure to receive timely responses from Administrative Remedy submissions; and the ineffectiveness of the administrative remedy process. Therefore, the Court dismisses these claims because plaintiff failed to properly exhaust his administrative remedies.

Given the Court's findings on the statute of limitations and exhaustion issues, plaintiff's Motion for Leave (Doc. 36) to submit evidence and Motion to Supplement (Doc. 28) are denied. Both motions seek leave to file additional evidence of certain envelopes that plaintiff alleges contained legal or special mail and that were not opened in his presence. One envelope is postmarked February 25, 2010, and the other contains a handwritten note that it was handed to plaintiff on April 23, 2010. Both of these incidents occurred well after plaintiff's Complaint was filed and certainly subsequent to the date he exhausted his administrative remedies on October 28, 2008. Because these claims were not included in plaintiff's administrative remedy packet, they were not properly exhausted and the Court will not consider this evidence when evaluating plaintiff's remaining exhausted claims.

D.    *Failure to State a Constitutional Claim*

Plaintiff's remaining claims are: (1) USP Leavenworth staff improperly handled plaintiff's personal mail, including catalogs; (2) USP Leavenworth staff tampered with plaintiff's legal mail; (3) properly marked legal mail was opened outside of plaintiff's presence; (4)

11

plaintiff received few, if any, magazines he subscribed to; and (5) plaintiff has not received certain catalogs. The Court groups these remaining, exhausted claims into two categories: those claims that relate to allegations of catalog and magazine tampering, and those that relate to allegations of tampering with plaintiff's personal, legal, and special mail. These remaining claims relate to incidents between April 13, 2007 and October 28, 2008, the date plaintiff's final appeal was decided through the administrative remedy system.

### 1. Claims Related to Catalog and Magazine Tampering

Plaintiff alleges that he has not received a number of catalogs to which he has subscribed. He states in the Complaint that he did receive an Eastbay catalog on April 3, 2008, after a correctional officer obtained it for him from "centerhall," when the officer recognized plaintiff's name on it. In his Supplement, plaintiff alleges that, of the several catalogs he subscribed to, he received some only once and others "only a few times periodically." Plaintiff does not challenge any prison regulation concerning receipt of catalogs. The Tenth Circuit has held that a prisoner's "complaint about undelivered catalogs does not raise an issue of constitutional magnitude."[37] Because plaintiff's claim that he did not receive certain catalog subscriptions does not rise to the level of a constitutional claim, plaintiff fails to state a claim for relief.

Plaintiff alleges in his Complaint that he has not received several magazines that he subscribed to or that family members subscribed to for him. Plaintiff submitted with his Supplement various correspondence between himself and the publishers of these magazines, confirming his subscription and that they were mailed out to USP Leavenworth. He alleges in the Complaint that his magazines have been tampered with; he does not challenge any prison

---

[37]*Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *see also Foster v. Nelson*, 153 F.3d 727 (table), 1998 WL 422030, at *1 (10th Cir. July 23, 1998).

12

regulation concerning magazines. Indeed, plaintiff states in his response brief that prison officials deliberately violated his constitutional rights, but he does not point to any facts to support this allegation, other than the fact that the deprivation was prolonged and that prison officials did not conduct a proper investigation. His Complaint, in fact, alleges a "breakdown" in the mail handling process. These factual allegations do not, as a matter of law, establish a constitutional violation. Instead, taking all of plaintiff's factual allegations as true, they establish that prison officials negligently deprived him of his constitutional rights, an allegation that does not rise to the level of a due process claim.[38]

Plaintiff suggests that prison officials deprived him of his catalogs and magazines indefinitely, which constitutes a crime of theft. In a civil rights action against multiple government actors such as this case, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the [government agency]."[39] Plaintiff makes no factual allegation in his Complaint alleging any particular defendant stole his mail. Plaintiff filed a Supplement, in which he lists the names of defendants whose names were listed as unknown at the time he filed the Complaint. But the Supplement merely lists each of these individuals and recites their

---

[38]Plaintiff refers in his response to deprivations of his Fourth, Fifth, and Eighth Amendment rights. But plaintiff does not explain the basis of his Fourth Amendment claim; he does not allege that he was subject to an unreasonable search or seizure, nor does he allege excessive force. Under the Eighth Amendment, an objective component requires an "extreme deprivation" in order to make out a conditions-of-confinement claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "'[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Id.* (quoting *Wilson*, 501 U.S. at 298). Liberally construing plaintiff's Complaint to allege an Eighth Amendment violation, he does not allege any facts that would rise to the level of depriving plaintiff of the "minimal civilized measure of life's necessities."

[39]*Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008).

alleged job duties. Neither the Complaint nor the Supplement provides fair notice to any individual defendant of an allegation of theft. As already explained, plaintiff's Complaint and Supplement, when construed in the light most favorable to him, alleges negligence and a breakdown of procedures. These allegations are not sufficient to raise a constitutional due process claim.

**2. Claims Related to Tampering with Personal, Legal, and Special Mail**

Liberally construing plaintiff's Complaint and Supplement, he does not allege that any prison mail regulations are unconstitutional. Instead, plaintiff alleges a number of claims of tampering with his personal, legal, and special mail. He contends that prison officials have violated the BOP regulations governing mail handling on occasion with regard to his legal, special, and personal mail. Plaintiff does not make any specific allegation of who among the many named defendants tampered with his mail. Nor does plaintiff factually detail how his mail was tampered with or "molested," other than to allege that it was already open when he received it. Such vague allegations fail to provide any notice of the basis of his claims against the individual defendants.

The First Amendment protects a prisoner's right to receive mail, but that right does not prohibit prison officials from inspecting mail for security purposes.[40] And "[i]n the case of unprivileged incoming and outgoing prison mail, regulation by prison officials is 'essentially an administrative matter in which the courts will not intervene.'"[41] Under BOP regulations, general mail is subject to opening and inspection by institution staff and "may be read as frequently as

---

[40]*Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).

[41]*United States v. Gordon*, 168 F.3d 1222, 1228 (10th Cir. 1999).

14

deemed necessary to maintain security or monitor a particular problem confronting an inmate."[42] Special mail procedures govern properly marked legal correspondence.[43] Under the applicable regulation, the envelope must be marked with the attorney's name and the marking: "Special Mail—Open only in the presence of the inmate."[44] To the extent plaintiff alleges a constitutional violation because prison officials opened his personal, unprivileged mail outside his presence, plaintiff fails to state a constitutional claim. This type of mail clearly falls within the regulations governing general mail, and the failure to open such mail in the inmate's presence does not give rise to a constitutional claim.

In the Complaint, plaintiff states that "the majority of his legal mail has been tampered with." He states that there have been "multiple times" when his legal mail was marked "PERSONAL LEGAL MAIL—OPEN ONLY IN THE PRESENCE OF INMATE," yet the mail was opened and delivered as if it was regular mail. Plaintiff does not allege any dates when these incidents occurred, but he attaches to his Supplement: (1) an envelope from the Clerk's Office for the United States District Court, Western District of Missouri, stamped "Special Mail, Open only in the presence of the inmate" and time stamped October 25, 2007; (2) an envelope from the United States Attorney, Western District of Missouri, marked "Legal Mail," with an unreadable time stamp and a handwritten note by plaintiff that it was "opened before given to counselor Rec'd 1:20 P. 10/25/07 A.D."; (3) two envelopes from the United States Attorney, District of Kansas, each marked "Special Mail, Open Only in the Presence of the Inmate."

---

[42] 28 C.F.R. § 540.14(a).

[43] *Id.* §§ 540.18, 540.19.

[44] *Id.* § 540.19(b).

15

Plaintiff alleges in the Supplement that each of these letters were opened and delivered to him outside the regular mail route by the shift guard.[45]

The October 25, 2007 envelope appears to have the appropriate markings under BOP regulations to be processed as special mail; however, the envelope from the United States Attorney, Western District of Missouri, does not appear to be appropriately marked under the BOP regulations. The two envelopes from the United States Attorney, District of Kansas are not time stamped, although one envelope (Doc. 5, Attach. 1 at 17) has a decipherable postmark of April 20, 2009, after plaintiff filed suit. This particular claim was therefore not exhausted. At most, these envelopes demonstrate two independent instances when plaintiff's legal mail was opened outside his presence, and plaintiff does not allege deliberate conduct on the part of prison officials. Inadvertent opening of prisoner mail is not sufficient to establish a First Amendment constitutional violation.[46] Furthermore, as with his claims regarding non-delivery of magazines and catalogs, plaintiff's claim that his special and legal mail was tampered with alleges negligence, which is insufficient to establish a constitutional claim. Plaintiff does not allege an improper motive on the part of prison officials, but merely a breakdown in implementing mail procedures. Such allegations do not give rise to a constitutional claim.[47]

In order to establish a due process claim for denial of access to the courts, plaintiff must show "'non-delivery of his legal mail resulted in actual injury by frustrating, impeding, or

---

[45](Doc. 5, Attach. 1 at 10, 17–18.)

[46]*Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990).

[47]*See id.*; *Brown v. Williams*, 36 F. App'x 361, 362 (10th Cir. 2002); *Bagguley v. Barr*, 893 F. Supp. 967, 972 (D. Kan. 1995).

hindering his efforts to pursue a legal claim.'"[48] Plaintiff makes no factual allegations in his Complaint and Supplement that the specific legal and special mail that he claims was tampered with by prison officials resulted in actual prejudice. In fact, plaintiff never alleges that he did not receive legal mail, only that it was opened outside of his presence. The Court finds that plaintiff fails to state a claim for violation of due process.

Because the Court disposes of plaintiff's individual-capacity claims on the basis that the Complaint and Supplement fail to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6), the Court need not proceed to consider defendants' alternative motion for summary judgment and therefore, finds that motion moot.

### E. Official Capacity Claims

To the extent that plaintiff seeks money damages on his *Bivens* claim from defendants in their official capacity, his action is not cognizable.[49] The Tenth Circuit has labeled an "official capacity *Bivens* suit" an "oxymoron," and has held that such an action operates as a claim against the United States.[50] A suit for damages against the United States is barred by sovereign immunity unless such immunity has been waived.[51] The United States has not waived sovereign immunity in *Bivens* actions.[52] Therefore, plaintiff's claims against defendants in their official

---

[48]*Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005) (quoting *Lewis v. Casey*, 518 U.S. 343, 351–53 & n.3 (1996)) (internal quotation marks and alterations omitted).

[49]*See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003), *cert denied*, 125 S. Ct. 344 (2004) ("a *Bivens* claim cannot be brought against . . . defendants in their official capacities").

[50]*Farmer v. Perrill,* 275 F.3d 958, 963 (10th Cir. 2001).

[51]*Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989).

[52]*Laury v. Greenfield*, 87 F. Supp. 2d 1210, 1213 (D. Kan. 2000); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 483-86 (1994).

capacity are barred by the doctrine of sovereign immunity.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to Dismiss, or, in the alternative, for Summary Judgment (Doc. 17) **is granted**. All remaining defendants are dismissed pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(4), or 12(b)(6). Plaintiff's Motion to Supplement (Doc. 28) **is denied**; plaintiff's Motion for Leave to Introduce Evidence (Doc. 31) **is denied**; and plaintiff's Motion for Order (Doc. 36) **is denied**.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Extension of Time to File Surreply (Doc. 38) **is denied**.

**IT IS SO ORDERED.**

Dated: September 3, 2010

 S/ Julie A. Robinson
 JULIE A. ROBINSON
 UNITED STATES DISTRICT JUDGE